**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

|  |  |  |
|---|---|---|
| **JACK P. CEDILLO,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:05-CV-0064-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed April 5, 2005, for

judicial review of the administrative decision of the Commissioner of Social Security denying

Plaintiff's application for supplemental security income benefits under Title XVI of the Social

Security Act.  Plaintiff filed a brief in support of his complaint on May 1, 2006, Defendant filed her

brief on June 30, 2006, and Plaintiff filed his reply on July 9, 2006.  The United States District

Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for

report and recommendation, proposed findings of fact and conclusions of law, and a proposed

judgment.  This court, having considered the pleadings, the briefs, and the administrative record,

recommends that the United States District Judge affirm the Commissioner's decision and dismiss

the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed an application for supplemental security income benefits protectively on January 4, 2000, alleging disability beginning December 6, 1999.  Tr. 14, 302-03.  Plaintiff's application was denied initially and upon reconsideration.  Tr. 14, 304-07, 309-14.  Plaintiff filed a Request for Hearing by Administrative Law Judge on May 3, 2000, and this matter came for hearing before the Administrative Law Judge ("ALJ") on January 28, 2003.  Tr. 14, 34, 332-41.  Plaintiff, represented by a non-attorney, testified in his own behalf.  Tr. 280-99.  Dr. George Weilepp, a medical expert ("ME") and Carol Bennett, a vocational expert ("VE"), appeared but did not testify.  Tr. 14.  At the hearing, Plaintiff requested that his alleged onset date be amended to November 2, 1997.  Tr. 14, 335.  The hearing was continued in order to obtain medical evidence regarding the claimant's mental status and to consider the amended onset date.  *Id.*

On May 15, 2003, the hearing was held.  Plaintiff, represented by a non-attorney, testified in his own behalf.  Tr. 347-63, 382-83.  Dr. George Weilepp appeared as an ME and Michael Driscoll appeared as a VE and both testified as well.  Tr. 14, 364-85.  The ALJ issued a decision unfavorable to Plaintiff on June 20, 2003.  Tr. 11-25.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act on or after December 17, 1997.  He found that:  Plaintiff had not engaged in substantial gainful activity at any time since December 17, 1997.  Tr. 15.  Plaintiff has "severe" impairments, including problems with his left knee, back, right hand, and arm.  *Id.*  Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id.*  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.  Tr. 17.  The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible.  Tr. 20.

The ALJ found that Plaintiff could not return to his past relevant work as a roofer, truck driver, forklift operator, or machine operator.  Tr. 15, 18, 20.  He noted that Plaintiff was considered a "younger person" with a limited education.  20 C.F.R. §§ 416.963, 416.964; Tr. 18, 20.

The ALJ found that Plaintiff retained the RFC to perform the requirements of sedentary work activity, limited to jobs that do not require:  more than occasional stooping, balancing, crouching, crawling or kneeling; climbing; working at unguarded heights or near unguarded hazardous mechanical equipment; sitting without the opportunity to stand every 40 minutes in addition to a lunch and normal legal breaks during the work day; walking/standing more than 2 hours out of an 8-hour work day; standing/walking more than 20 minutes at one time; pushing/pulling with the left lower extremity more than rarely; understanding, remembering, and carrying out more than simple instructions; maintaining fixed concentration and attention for periods of longer than 20 minutes without the opportunity to refocus and come back to fixed concentration; working with money or doing math problems; or having more than superficial interaction with co-workers or the public while in the performance of job duties.  Tr. 18, 20.  Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments.  Tr. 19, 21.  He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which

exists in the national economy, including the jobs of surveillance system monitor, with 2,800 jobs

in Texas and 214,000 jobs nationally; document preparer for microfilming, with 2,500 jobs in Texas

and 106,000 jobs nationally; and assembler, with 5,500 jobs in Texas and 211,000 jobs nationally.

*Id.*  The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social

Security Act at any time through the date of his decision.  Tr. 19, 21.

Plaintiff submitted a Request for Review of Hearing Decision/Order on August 26, 2003.

Tr. 9.  The Appeals Council issued its opinion on February 2, 2005, indicating that although it had

considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that

there was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr. 35-38.  The

ALJ's decision, therefore, became the final decision of the Commissioner.

On April 5, 2005, Plaintiff commenced this action which seeks judicial review of the

Commissioner's decision that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United

States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is

limited to determining whether the decision is supported by substantial evidence and whether the

Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir.

2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence

"is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309

F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court

will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the

Commissioner's, even if the court believes that the evidence weighs against the Commissioner's

decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 19, 21.

### III.   DISCUSSION

Plaintiff claims that the ALJ's decision is not supported by substantial evidence. Plaintiff argues that the ALJ erred at step 3 by failing to find that his impairments met the criteria of Section 12.04 of the Listing of Impairments. Plaintiff further argues that the ALJ erred in making his RFC assessment by failing to incorporate all of the limitations imposed by his impairments into the RFC finding and by failing to give appropriate weight to Plaintiff's subjective allegations. Plaintiff also argues that the ALJ erred at step 5 by failing to incorporate all the limitations imposed by his impairments into the hypothetical question posed to the VE.

**A.**     **Whether the ALJ's decision is supported by substantial evidence.**

Plaintiff argues that the ALJ erred at step 3 by failing to find that he has met the requirements of Section 12.04 of the Listing of Impairments, erred in making his RFC determination, and erred in relying upon the testimony of the VE at step 5, where the hypothetical question posed to the VE

did not reasonably include all of the limitations imposed by his impairments.  The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ."  *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

      1.      **Whether the ALJ erred at Step 3 in finding that Plaintiff's mental impairment did not meet the criteria of Section 12.04 of the Listing of Impairments.**

Plaintiff argues that there is substantial evidence in the record demonstrating that his mental impairment met the criteria of Section 12.04 of the Listing of Impairments under either the part "a" or part "b" criteria.

In evaluating mental disorders under the Listing of Impairments, the Commissioner first considers whether the claimant has a medically determinable mental impairment.  *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 12.00.  Upon such a determination, the Commissioner then considers the criteria set forth in paragraphs B and C, which describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity.  *Id.*  The functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description that is manifested by the medical findings.  *Id.*  The Commissioner will first consider the paragraph B criteria before the paragraph C criteria and will assess the paragraph C criteria only if it is found that the paragraph B criteria are not satisfied.  *Id.*  The claimant will be found to meet a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied, thereby establishing presumptive disability.  20 C.F.R. Pt. 4, Subpt. P, App. 1, § 12.00.

Plaintiff argues that he has met the criteria of  § 12.04, Affective Disorders, and has shown presumptive disability.  *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1.  In order to meet the listing for § 12.04 for Affective Disorders, the Plaintiff must show medically documented persistence of depressive

syndrome[1] or manic syndrome[2] or bipolar syndrome,[3] which must result in two of the following: marked restriction of the activities of daily living; or marked difficulty maintaining social functioning; or marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)-(B).  Alternatively, the Plaintiff may demonstrate a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following:  repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, and a continued need for such arrangement.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (C).

Plaintiff argues that he has depressive syndrome and has demonstrated anhedonia, appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of guilt and

---

[1]     Depressive syndrome is characterized by at least four of the following:  anhedonia or pervasive loss of interest in almost all activities; or appetite disturbance with change in weight; or sleep disturbance; or psychomotor agitation or retardation; or decreased energy; or feelings of guilt or worthlessness; or difficulty concentrating or thinking; or thoughts of suicide; or hallucinations, or paranoid thinking.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 A(1)(a)-(I).

[2]     Manic syndrome is characterized by at least three of the following:  hyperactivity; or pressure of speech; or flight of ideas; or inflated self-esteem; or decreased need for sleep; or easy distractability; or involvement in activities that have a high probability of painful consequences which are not recognized; or hallucinations or paranoid thinking.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (A)(2)(a)-(h).

[3]     Bipolar syndrome is characterized with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)(3).

worthlessness, difficulty concentrating or thinking, and thoughts of suicide.  Pl. Brief at 2.  He

further argues that these symptoms have resulted in marked restrictions in his activities of daily

living, marked difficulties in maintaining social functioning, and marked deficiencies in maintaining

concentration, persistence, or pace.  Pl. Brief at 2.   Plaintiff also argues that the ALJ also failed to

give appropriate weight to the opinion of Dr. Paul Kula, a psychiatric consultative examiner ("CE"),

who indicated that Plaintiff had a Global Assessment of Functioning ("GAF")[4] score of 40[5] on Axis

V[6] in making his RFC determination, and substituted his own judgment as a laymen in assessing the

limitations imposed by Plaintiff's mental impairment.

In his decision the ALJ found that Plaintiff's mental impairment, specifically depression,

caused a mild limitation in the activities of daily living, further noting that such limitations were

primarily due to physical limitations; moderate difficulties in maintaining social functioning, noting

that Plaintiff has friends and visits with family, but is irritable; moderate difficulties in

concentration, persistence, or pace; and no episodes of decompensation.  Tr. 18.

---

[4]     The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning."  *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.  This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome."  *Id.*

[5]     The DSM-IV provides that a GAF score of 31 to 40 indicates some "impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

[6]     The axial system of evaluation is used to facilitate comprehensive and systematic evaluation with attention to the various mental disorders; general medical conditions; psychosocial and environmental problems; and level of functioning. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 27.  An Axis I diagnosis is used to report all clinical disorders except for personality disorders and mental retardation, which are reported on Axis II.  *Id.* at 27-28.

The ALJ noted that Plaintiff underwent a psychological consultative examination, wherein the examiner stated that Plaintiff's test results indicated that Plaintiff was functioning intellectually within the mildly retarded range of abilities, although such results were likely influenced by medication and by being told by a physician that he was in a deep depression.  Tr. 17-18.  The ALJ noted that the examiner opined that Plaintiff's diagnosis was a single episode of moderate major depression without psychotic symptoms; cognitive disorder, not otherwise specified; occupational problem; math disorder; and a GAF score of 55.[7]  *Id*.  The ALJ also noted the CE's report of Plaintiff's activities, including having a few friends, sleeping better on Depakote, walking around his apartment, and watching movies.  Tr. 17.  The ALJ notes the examiner's further opinions, including Plaintiff's fair ability to make occupational and personal social adjustments and in understanding, remembering, and carrying out simple and non-complex job instructions.  Tr. 18.

The ALJ ultimately found that Plaintiff retained the ability to perform work at the sedentary exertional level, limited by not being required to: stoop, balance, crouch, crawl, or kneel more than occasionally; climb; sit without the opportunity to stand every 40 minutes in addition to a lunch and normal legal breaks during the work day; walk/stand more than two hours during an 8-hour work day; stand/walk more than 20 minutes at one time; push or pull with the left lower extremity more than rarely; work at unguarded heights or near hazardous mechanical equipment; understand, remember, and carry out more than simple instructions; maintain fixed concentration and attention for periods of longer than 20 minutes without the opportunity to refocus and come back to fixed

---

[7]     The DSM-IV defines a GAF of 51-60 as moderate symptoms (e.g., flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

concentration; work with money or do math problems; have more than superficial interaction with co-workers; or to interact with the public while in the performance of job duties. Tr. 18.

The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings. At step 3, the burden of proof rests with a claimant. Ultimately, the claimant has the burden of proving that his impairment or combination of impairments meets or equals the listings. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620. To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a and 416.920a. He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The ALJ must evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "b" criteria. A five-point scale is used to rate the degree of limitation in the first three of those functional areas. 20

C.F.R. § 404.1520a (c)(1)-(4).  These four separate areas are deemed essential for work.  *Boyd*, 239

F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)).  The written decision of the ALJ must incorporate

pertinent findings and conclusions based on the technique and must include a specific finding as to

the degree of limitation in each of the functional areas described.  20 C.F.R. § 404.1520a(e)(2).  The

Psychiatric Review Technique form ("PRTF") represents one way in which such findings may be

documented.  20 C.F.R. § 404.1520a(e).  After the ALJ rates the degree of functional limitation

resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s).

20 C.F.R. § 404.1520a(d).  If the degree of functional loss falls below a specified level in each of

the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation

process.  20 C.F.R. § 404.1520a(c)(1).  If the ALJ finds that the mental impairment is "severe" under

20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental

disorder under 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00-12.09; 20 C.F.R. § 404.1520a(c)(2).  If the

impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an

RFC assessment.  *Boyd*, 239 F.3d at 705.

  Dr. Kula's psychiatric examination was performed on July 2, 2003.  Tr. 297-99.  Dr. Kula

noted Plaintiff's reports of panic attacks and of panic disorder which have kept him from leaving

the house and of his fits of crying.  Tr. 297.  He noted Plaintiff's report of thoughts of suicide, with

no attempts.  *Id*.  He noted that upon examination Plaintiff appeared anxious and depressed; was

alert and oriented X 3; with no evidence of attention deficit problems; attention and memory were

"okay," with normal thought processes; no evidence of any bipolar aspects, mania, or hypomania;

of average intellect, "at least"; with no psychotic or obsessive-compulsive features.  Tr. 298.  Dr.

Kula noted Plaintiff's report of problems sleeping at night and his appetite and weight being low

with weight loss in the last year.  *Id*.  Dr. Kula opined that Plaintiff's diagnosis on Axis I was major

depression, recurrent, with melancholia, as well as panic disorder with agoraphobia. *Id*. He opined that Plaintiff's GAF score was 40 and indicated that he was going to adjust Plaintiff's medication. Tr. 299.

Plaintiff was examined by Dr. Rexford K. Anderson, Jr., a neurologist, on January 15, 2003. Tr. 238-43. Dr. Anderson noted Plaintiff's complaints of headaches and feeling "a little panicky or anxious when he has the headaches." Tr. 239. He noted Plaintiff's report of feeling depressed at times and at other times feeling fairly well. *Id*. He noted Plaintiff's report of difficulty sleeping, and his report of losing about 20 pounds over the previous six months, although he has a normal appetite. Tr. 240. Dr. Anderson indicated that "there is a possibility that Depakote ER 500 mg would be helpful" to Plaintiff and also indicated "probable bipolar disorder." Tr. 242.

Plaintiff testified that: He experienced panic attacks. Tr. 350. He has panic attacks three or four times a day, lasting from 10 to 15 minutes. Tr. 358. He has friends with whom he visits primarily by telephone. Tr. 352. He has had thoughts of suicide a couple of times. Tr. 354. He goes out to buy small amounts of groceries. *Id*. He has lost 25 pounds because of his depression. Tr. 259-60.

Plaintiff argues that the evidence in the record and his testimony demonstrate that he has met the criteria of Section 12.04 of the Listing of Impairments. While there is evidence in the record indicating that Plaintiff experienced certain of the symptoms under the part "a" criteria, in order to meet the requirements of this Listing, Plaintiff must also demonstrate that he has met the part "b" criteria.

On August 12, 2003, Dr. Kula noted that Plaintiff's depression had improved and his panic attacks were under better control after adjusting his medications on July 7, 2003. Tr. 296. In October, Plaintiff reported that his panic attacks had returned since he was under stress, and Dr.

Kula adjusted his medications.  Tr. 295.  The psychological CE noted Plaintiff's ability to care for his own personal needs in terms of personal hygiene, to drive and maintain a driver's license; to do some cooking, and to shop for some items.  Tr. 260.  This is consistent with Plaintiff's testimony. *See* Tr. 354-55.  On January 28, 2003, Plaintiff testified that he was diagnosed with insomnia and panic attacks "two months back."  Tr. 337.  The hearing was continued to obtain a consultative examination.  Tr. 339.  The psychological CE opined that Plaintiff's memory skills were "below average," and Dr. Kula opined that Plaintiff's memory was "okay" on formal testing.  *Compare* Tr. 298 and 360.  This is consistent with the ALJ's determination of moderate difficulties in concentration, persistent, or pace.  Tr. 18.  The ALJ found that Plaintiff's mental impairment caused a mild limitation in the activities of daily living, which is consistent with the opinion of the CE, who noted that Plaintiff was able to take care of his personal needs, and the notation by Dr. Kula, who indicated that Plaintiff was dressed and groomed appropriately.  This is also consistent with the notations in the record indicating that Plaintiff is able to drive and maintain a driver's license, occasionally goes shopping, is able to prepare some meals, and otherwise takes care of his personal needs.  In finding that Plaintiff was moderately limited in his social functioning, the ALJ correctly noted that Plaintiff  has friends and visits with family, but he is irritable.  Tr. 18.  This finding is consistent with Plaintiff's reports to his various physicians, as well as with his testimony.  Moreover, the records contain no evidence of any episodes of decompensation of extended duration.

The record demonstrates that the ALJ discussed and considered the opinions of the various treatment providers, as well as Plaintiff's subjective allegations and testimony in determining the limitations imposed by his mental impairments.  His determination of the limitations imposed by Plaintiff's mental impairment under the part "b" criteria is supported by substantial evidence, as is his determination that Plaintiff's mental impairment did not meet the criteria of Section 12.04 of the

Listing of Impairments.  While Plaintiff argues that Dr. Kula's GAF scare of 40 demonstrates that he is "functioning at a severely mentally retarded level," his argument is not supported by the facts. Dr. Kula's GAF score does not represent a medical opinion as to specific limitations imposed by Plaintiff's mental impairment.  Rather, it represents a tool he used in the course of his examination, diagnosis, and treatment.  In any case, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).  "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  The record demonstrates that the ALJ appropriately weighed the evidence in determining the limitations imposed by Plaintiff's mental impairment in making his step 3 determination.

Plaintiff further argues that the ALJ failed to consider his subjective testimony in making his step 3 finding.  Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms.  The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

In this case the ALJ specifically noted Plaintiff's testimony of living alone in an apartment, watching television, and talking on the telephone with friends. Tr. 17.   He also noted Plaintiff's testimony regarding treatment for panic/anxiety attacks and his testimony of having three to four panic attacks daily, lasting from 10 to 15 minutes. *Id*.  The ALJ compared such testimony with Plaintiff's reports of his own activities, as well as the reports of the CEs and treatment providers. Tr. 17-18.  The ALJ ultimately found that the evidence of record did not establish that Plaintiff's ability to function was so severely impaired as to preclude the performance of all work activities. Tr. 18.

Plaintiff argues that the subjective evidence was consistent with the objective evidence.  He argues that the ALJ failed to consider such consistency in making his credibility determination.  He argues that if the ALJ had given appropriate weight to the subjective allegations, he would have found that Plaintiff met the criteria of Section 12.04 of the Listing of Impairments.

The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citation omitted)).  The ALJ's opinion demonstrates that he appropriately considered and discussed the record as a whole, as well as Plaintiff's specific subjective allegations as to the limitations imposed by Plaintiff's mental impairment in making his credibility determination.  The ALJ is the factfinder, and his evaluation of the credibility of subjective complaints is, therefore, entitled to judicial deference if supported by substantial evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988); *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987).  His credibility determination is supported by substantial evidence in the record. The ALJ did not err in considering the evidence, including Plaintiff's subjective allegations as to the limitations imposed by Plaintiff's mental impairment.

Plaintiff failed to demonstrate that he has experienced marked restriction of the activities of daily living; or marked difficulty maintaining social functioning; or marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration; nor has he demonstrated a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following: repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, and a continued need for such arrangement.

The Plaintiff bore the burden at step 3 of the sequential evaluation of proving that his mental impairment met the criteria of Section 12.04 of the Listing of Impairments, and was required to provide and identify evidence in the record that supports all of the criteria of the relevant listing. 20 C.F.R. §§ 404.1520(d) and 404.1526(a); *Selders*, 914 F.2d at 619. Having considered the evidence of record, the court is also unable to find that Plaintiff has shown that his impairments met or equaled a Listing in the Listing of Impairments for the relevant period. Therefore, the ALJ did not err in evaluating Plaintiff's impairments at step 3 of the sequential evaluation process. I find that the ALJ did not improperly fail to weigh and consider the opinion of Dr. Kula in determining the limitations imposed by Plaintiff's mental impairment, nor did he err in finding that Plaintiff's mental impairment did not meet the criteria of Section 12.04 of the Listing of Impairments, nor did he err in making his credibility determination or in weighing Plaintiff's subjective allegations as to the limitations imposed by his mental impairment.

2.      **Whether the ALJ erred at step 5 by failing to include all of the limitations imposed by Plaintiff's impairments into the hypothetical question posed to the VE.**

Plaintiff argues that the ALJ erred by failing to include all of the limitations imposed by his impairments into the hypothetical question posed to the VE. Plaintiff further argues that the ALJ did not carry his burden at step 5 in relying upon the VE regarding the job demands of the surveillance system monitor job.

Plaintiff specifically argues that he has significant problems with standing, despite the testimony of the ME who indicated that Plaintiff could stand/walk for six hours out of an 8-hour work day. Pl. Brief at 5. Plaintiff notes that he has problems with his back, with the tear of the ACL, with a medial meniscal tear, and with a large Baker's cyst. Plaintiff notes that Dr. Jose Guerra, a treating physician, indicated that Plaintiff is "disabled."

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. However, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20

C.F.R. § 404.1527(e)(1)).  Insofar as Dr. Guerra opined that Plaintiff was "disabled" or unable to work, the ALJ was not required to give such opinions any particular significance.  The ALJ did not err by failing to accord "controlling weight" or any special weight to Dr. Guerra's opinion that Plaintiff should not work.

Plaintiff argues that the record demonstrates that he "would have significant limitations regarding standing and walking, thereby precluding any work."  Pl. Brief at 7.  In his opinion the ALJ found that the medical evidence established that Plaintiff has back disease at one level, with remote spondylolisthesis; knee problems, with a tear and no atrophy of the knee; remote right hand problem, with release to heavy activity by his hand surgeon in 1991; a headache problem; and depression.  Tr. 20.

The ALJ also discussed the opinions of Dr. Weilepp, the ME, who testified regarding the limitations imposed by such impairments.  Tr. 16.  Dr. Weilepp opined that Plaintiff's impairments, singly and in combination, did not meet or equal in severity any of the impairments in the Listing of Impairments.  *Id.*  Dr. Weilepp testified that Plaintiff did not have any limitation in sitting or in standing or walking 4 to 6 hours in 60 to 90 minute increments during an 8-hour work day.  *Id.*  Dr. Weilepp also indicated that Plaintiff's back and knee impairments would limit him insofar as he could not perform job duties around heights or dangerous machinery; climb ladders while performing job duties; or frequently kneel, crawl, or squat; but he can handle 20 pounds frequently and 35 pounds occasionally.

A "medical advisor" is a neutral consultant who, at the request of the Social Security Administration, reviews a claimant's medical records, explains or clarifies information reflected therein, and expresses expert opinions as to the nature and severity of impairments and whether such impairments equal the criteria of any impairment in the Listing of Impairments.  20 C.F.R.

§§ 404.1527(f)(2)(iii), 416.912(b)(6), and 416.927(f)(2)(iii).  When a medical professional functions as an expert witness in the course of an evidentiary hearing before an ALJ, Social Security Ruling 96-6p designates the medical professional as a "medical expert."  Social Security Ruling 96-6p (July 2, 1996)("SR 96-6p").  Clearly, an ALJ may rely upon testimony of a medical adviser when evaluating the nature and extent of a claimant's impairments.  *Richardson v. Perales,* 402 U.S. 389, 408 (1971).

In *Masterson*, the Fifth Circuit noted that the ALJ relied upon the testimony of the ME as to the limitations imposed by the claimant's mental impairment.  *Masterson*, 309 F.3d at 270 (noting that the ME testified that the claimant experienced slight restrictions in daily activities, slight to moderate difficulties in social functioning, and seldom to often-experienced deficiencies of concentration).   In *Leggett*, the Fifth Circuit noted that the ALJ relied in part upon the testimony of the ME who opined, based on the evidence in the record, that the claimant was capable of performing sedentary work.  *Leggett v. Chater,* 67 F.3d 558, 565 (5th Cir. 1995).  In *Ripley*, the Fifth Circuit specifically noted that the absence of a medical source statement "does not, *in itself*, make the record incomplete."  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (emphasis supplied).  Reading these authorities together, it is apparent that the testimony of the ME may be used by the ALJ in determining the limitations imposed by the claimant's impairments.

Plaintiff argues, however, that the record demonstrates that he has additional limitations.  While Plaintiff points to the evidence demonstrating his back and knee problems, the evidence he identifies does not demonstrate that he would have significant limitations in standing or walking beyond those incorporated by the ALJ into the RFC finding.  Rather, it is the same evidence of his impairments noted by the ALJ in his opinion and discussed by Dr. Weilepp in his testimony.

Plaintiff notes that he underwent excision of the ganglion from his right volar wrist on May 8, 1991, and argues that this "would also be significantly limiting in his ability to perform fine and dextrous movements with his hand, including fingering." Pl. Brief at 7.  However, Plaintiff's treating physician, Dr. James G. Denton, noted thereafter that Plaintiff was making excellent progress with his work hardening program. Tr. 198.  On September 9, 1991, he noted that Plaintiff was doing fine, making good progress, and was continuing with his work hardening program. Tr. 197.  Dr. Denton noted on January 31, 1992, that Plaintiff had improved tremendously and was lifting up to 65 to 70 pounds with his right hand. Tr. 196.  He also noted that Plaintiff was using a wrist wrap but noted no other limitations.  The record does not contain substantial evidence to demonstrate that Plaintiff experienced other limitations in his use of the right upper extremity during the relevant period.

The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).  The hypothetical presented to the VE need only reasonably incorporate the limitations accepted by the ALJ.  *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (no reversible error where the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations).  Here, the ALJ included those limitations he found supported by the record in his RFC assessment and in his hypothetical questions.  These limitations were supported by the testimony of the ME.  The evidence, medical opinions, and treatment notes of Plaintiff's treating physicians did not indicate that he was otherwise limited in his use of the upper extremity or in his ability to stand and walk.  The ALJ did not err in presenting the hypothetical question to the VE, and the questions posed appropriately incorporated those limitations supported by the record.

Plaintiff further argues that the ALJ erred in relying upon the testimony of the VE at step 5 in the sequential evaluation process, insofar as the VE testified that the hypothetical person could work as a surveillance system monitor if this person had limitations of fixed concentrations for 20 minutes, then must refocus.  Plaintiff argues that "[i]t doesn't make sense that the VE testified that it [the limitation of maintaining fixed concentration for 20 minutes at a time] would not affect the surveillance job, and that it is not a requirement for this job.  In reality, it is exactly what this work requires."  Pl. Brief at 10.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions.  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)).  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Id.*    In testifying, a  vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job."  *Fields*, 805 F.2d at 1170.

The record demonstrates that upon cross-examination by Plaintiff's representative, the VE testified that

> really, a surveillance system monitor does not stare at the monitors because what the person is identifying on [sic] is the movement in the monitor.  So you're looking at the different monitors.  So you're actually looking at different things each time.

Tr. 384.  Plaintiff's argument that "[i]n reality, it is exactly what this work requires" fails to take into account that the VE was performing his specific function – using his expertise as the basis for testimony of the requirements of a specific job and the ability of a hypothetical individual to perform such a job. *See Fields,* 805 F.2d at 1170.  Plaintiff's argument is without merit.

Plaintiff next argues that he has additional limitations, including pain affecting concentration, requiring rest throughout the day, needing to prop his leg up for 20 to 30 minutes at a time, and being unable to work for up to four hours of an 8-hour workday.  As noted above, the ALJ incorporated those limitations supported by substantial evidence in the record into the RFC finding. The ALJ did not accept these additional limitations and was therefore not required to incorporate them into the hypothetical questions posed to the VE.  The task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*  The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record.  *Muse*, 925 F.2d at 790. Indeed, the RFC assessment also reflects the ALJ's credibility determination which, as noted above, is supported by substantial evidence in the record.

I find that the ALJ did not err by failing to incorporate all of the limitations imposed by Plaintiff's impairments into his RFC finding, nor did he err by failing to incorporate such limitations into the hypothetical question posed to the VE.  I further find that the ALJ did not err in relying in part upon the testimony of the ME in making his RFC determination, or in making his credibility assessment, both of which were supported by substantial evidence in the record.  I further find that the ALJ did not err in relying upon the testimony of the VE at step 5 in the sequential evaluation process in finding that Plaintiff retained the ability to perform other work which exists in the national economy.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.   *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 13th day of February, 2007.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**